## Commonwealth v. Henry

*Charles M. Elliott*, district attorney, for Commonwealth.

*Frank S. Hughes*, for defendant.

CRICHTON, P. J., June 27, 1938.—Defendant was indicted· at the above term and number for breaking and entering and. larceny. His trial at the January term, 1938, resulted in a disagreement. At the April term, 1938, he was tried again, and convicted of larceny. He has moved for a new trial on the ground that the verdict was against the law and the evidence.

It is charged by the Commonwealth that, along with one Tom White, defendant broke and entered the barn of Roy Cleveland and stole therefrom a quantity of buckwheat. From the evidence it is certain that these crimes were committed by someone. The question at issue is whether defendant was concerned therein, which he denies.

Practically all the testimony against defendant came from Tom White. He stated that defendant came to his house at about six or seven in the afternoon in question; that they started for a certain place in Mrs. White's car to get gasoline; that they got to Cleveland's barn about 8 p.m., saw the bags of grain there, went in and took

some, were pursued by another car, but left it and reached home about 9 or 10 p.m.; that they placed the grain in White's granary and a few days afterward sold it to the G. L. F. at Wellsboro.

Defendant denies that he was with White that evening, and that he knew anything of the theft. He admitted the sale to the G. L. F. but said that this was buckwheat raised by him. It appeared that he had previously sold to Charles Davis about the same amount that he had raised, but he said that this was partly White's and partly his, and that the quantity sold to the G. L. F. was the balance of his. White and defendant are relatives and live near each other.

If this conviction is to stand it must do so on the practically unsupported testimony of White. We may well disbelieve the testimony of defendant as to the ownership of the grain sold by him, but there is nothing in the evidence to warrant the necessary finding that it belonged to Roy Cleveland except the story of White. And even if it belonged to Cleveland that fact does not establish the contention that defendant aided in stealing it. If he knew it was stolen, then he might have been convicted of receiving stolen goods, but not of larceny. To tie him to the actual stealing there is only the testimony of an admitted accomplice whose statement is full of inconsistencies and contradictions.

The Commonwealth sought to corroborate White by the testimony of Grant Stonebraker and officer Ed Wood, but succeeded only in showing that White was not telling the truth. They stated that without identifying the occupant or occupants they saw this car leaving the Cleveland barn heavily loaded about 12:30 or 1 a.m., four or five hours after the time given by White, who also testified that they paid only one visit to the barn. The testimony of Wood and Stonebraker is worthy of belief and therefore in this respect White's was false. At the hearing before the magistrate he testified that defendant came to his house about nine o'clock and that they left there

about ten, while now he says they arrived at Cleveland's about eight. He said that they were going for a ride, while now he says they were going for gasoline. He said that defendant went into the barn and got the bags of grain, while now he says both went in. He said they looked to see whether there was any grain in the barn, while now he says they just happened to see the doors open and the grain inside. (Mr. Cleveland said the doors were closed.) He said he didn't know when they got back home, while now he gives the time. He said he didn't know whether Henry had any buckwheat left after selling to the G. L. F., while now he says he had none.

While a defendant may be convicted on the uncorroborated testimony of an accomplice, it has been said over and over again by our appellate courts that it is very dangerous to do so, and that such testimony should be scanned with the greatest care. What is the result of so scanning this testimony? Here is not only an accomplice, but one who is serving a term in the penitentiary for another and similar crime, who repeatedly contradicts himself as to material facts, whose demeanor on the stand is not that of a truth-telling person, and who states that he is hoping for leniency on the part of the Commonwealth as a reward for the testimony given. Such testimony is corrupt at the source, and lacking any substantial corroboration, cannot in justice be accepted as a basis for sustaining the verdict of guilty. Moreover, his own wife contradicts him, saying that defendant was not at their house that day, and defendant's presence at another place at the time of the crime (whether at 8 p.m. or 1 a.m.) is attested by eight witnesses. While these witnesses may not be disinterested, they certainly are entitled to as much credit as is Tom White.

It is with the greatest reluctance that we grant a new trial. The crime is a particularly despicable one, in view of the helplessness of the farmer to prevent such raids. But that may not move us to allow a conviction to stand that has not been obtained by evidence that will endure

the wise tests that the law applies. We are bound to act, not in accordance with a personal conviction that we may have, arising from reasons outside of the evidence, but rather in accordance with a cool and careful survey of the evidence and the evidence alone. If that cannot convict defendant of guilt beyond a reasonable doubt there should be no conviction, else the lives and liberty of innocent persons are endangered by precedents that accept suspicion and distrust as substitutes for evidence. A guilty man may escape because the Commonwealth cannot produce proof sufficient to convict him, but such a debacle in the processes of society is to be preferred to a system that substitutes the guess of one man or set of men for a reasoned conclusion founded on facts shown by credible testimony. If we are under the impression that defendant is guilty, a search of our conscience reveals that such impression is not such reasoned conclusion, but scarcely more than a guess emanating from our opinion as to defendant's former conduct and reputation. Nor can we escape the thought that the jury's verdict rests upon this same unstable foundation. If the evidence warranted a verdict that defendant was guilty of larceny, it warranted as fully a verdict that he was guilty of breaking and entering, but the jury did not so find—probably a concession to their consciousness that in finding any verdict against him they were following their opinion as to the character of the man rather than the evidence against him—which surely no prudent and cautious person would accept as sufficiently reliable to guide his conduct in a matter of importance to himself.

*Order*

Now, June 27, 1938, the motion is sustained and a new trial is granted.